IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **CHRISTINE SHERRILL,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil No. 10-827-JPG-CJP** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT and RECOMMENDATION

This Report and Recommendation is respectfully submitted to District Judge J. Phil

Gilbert pursuant to **28 U.S.C. § 636(b)(1)(B)**.

In accordance with **42 U.S.C. § 405(g)**, plaintiff Christine Sherrill seeks judicial review

of the final agency decision denying her Disability Insurance Benefits (DIB) pursuant to **42**

**U.S.C. § 423**.

## Procedural History

Plaintiff applied for disability benefits in January, 2005, alleging that she became

disabled as of October 30, 2003. (Tr. 63). The application was denied initially and on

reconsideration. After a hearing, Administrative Law Judge (ALJ) Zane A. Lang denied the

application on September 10, 2008. (Tr. 16-24). In August, 2010, plaintiff's request for review

was denied by the Appeals Council, and the September 10, 2008, decision became the final

agency decision. (Tr. 6).

Plaintiff has exhausted her administrative remedies and has filed a timely complaint in

this court.

-1-

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

(1)     The ALJ failed to consider all relevant evidence, including a Mental RFC Assessment, a Psychiatric Review Technique, and a vocational assessment.

(2)     The hypothetical question posed to the VE did not include all of the limitations that were found by the ALJ.

(3)     The ALJ erred in his determination of plaintiff's credibility.

## Applicable Standards

In order to receive DIB, a claimant must be disabled within the meaning of the applicable statutes. For these purposes, a person is disabled when he or she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." **42 U.S.C. §§ 423(d)(1)(A).** A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. **42 U.S.C. §§ 423(d)(3).**

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. In essence, it must be determined (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is severe; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. **See, *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir.**

1992); *Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993); 20 C.F.R. § 404.1520(b-f).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant has a severe impairment but does not meet or equal a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). The Commissioner bears the burden of showing that there are a significant number of jobs in the economy that claimant is capable of performing. **See,** *Bowen v. Yuckert*, 482 U.S. 137, 146, 107 S. Ct. 2287, 2294 (1987); *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

It is important to keep in mind the proper standard of review for this Court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." **42 U.S.C. § 405(g).** Thus, the Court must determine not whether Ms. Sherrill was, in fact, disabled during the relevant time period, but whether ALJ Lang's findings were supported by substantial evidence; and, of course, whether any errors of law were made. **See,** *Books v. Chater*, 91 F.3d 972, 977-978 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir.1995)).

This Court uses the Supreme Court's definition of "substantial evidence," that is, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971). In reviewing for substantial evidence, the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However,

while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.  See, *Parker v. Astrue*, **597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.**

### The Decision of the ALJ

ALJ Lang followed the five-step analytical framework described above.  He concluded that Ms. Sherrill had not engaged in substantial gainful activity since October 30, 2003, although she had tried to go back to work.  He found that she has severe impairments of "a history of vertebral fractures, a depressive disorder and an anxiety disorder," which did not meet or equal a listed impairment.  (Tr. 18-19).

The ALJ concluded that plaintiff had the residual functional capacity (RFC) to perform a limited range of sedentary work, i.e., she can perform sedentary work, "except for climbing ladders, ropes or scaffolds, more than occasional balancing, stooping, kneeling, crouching, or crawling, more than occasional reaching in all directions with the left upper extremity, more than simple instructions or work related decisions, any public contact, more than occasional contact with supervisors or coworkers, and cannot maintain a production rate pace with production quotas measured periodically throughout the workday, but can maintain a production rate pace to meet production quotas at the end of the work day or workweek."  (Tr. 19).

A vocational expert (VE) testified that this limited RFC left Ms. Sherrill unable to perform any of her past relevant work as a correctional officer, a bookkeeper or a clerk typist.  In response to a series of hypothetical questions, the VE testified that the hypothetical person could do the jobs of semiconductor bonder and addressing clerk, which exist in significant numbers in the economy.  The ALJ accepted this testimony and found that plaintiff could perform those jobs

and was therefore not disabled.  (Tr. 23).

**The Evidentiary Record**

This Court has reviewed and considered the entire record in formulating this Report and Recommendation.  The following is a summary of some of the pertinent portions of the written record, focused on the issues raised by plaintiff.

**1.    Agency Forms**

Christine Sherrill was born in 1965.  She is insured for DIB through December 31, 2008.  (Tr. 95).  She worked as a correctional officer from September, 1997, through October 30, 2003.  Prior to that, she worked as a clerk typist at a college and as a bookkeeper at a bank  (Tr. 86).

In a Disability Report, Ms. Sherrill said she had an automobile accident on October 30, 2003, in which she suffered back injuries, a broken collar bone, fractured ribs, collapsed lung, kidney injury, liver laceration, spleen damage, nerve damage in her hands, and posttraumatic stress syndrome.  (Tr. 102-103).

**2.    Evidentiary Hearing**

The evidentiary hearing took place on August 11, 2008.   Plaintiff was represented at the hearing by an attorney.  (Tr. 844).

Plaintiff Christine Sherrill testified that she had worked as a correctional officer at Tamms Correctional Center beginning in September, 1997.  (Tr. 848).  She was initially injured in a car accident in 2003.  She was assaulted by a prison inmate in 2006.  (Tr. 850).   When she tried to go back to work in 2006, she was on light duty.  It only lasted about 2 months.  (Tr. 854).

She was 43 years old at the time of the hearing.  She graduated from high school and had

some college.  (Tr. 850).  She lived with her teenaged son and had an adult daughter living nearby.  (Tr. 851).

On a typical day, Ms. Sherrill tries to take a walk in the morning, as she was instructed to do by the physical therapist and pain management.  She tries to stay as active as she can.  Her son and daughter help with household chores.  She "may wash a few dishes."  Her daughter and sister help with grocery shopping.  She shops for food about once a month, just to get a few odds and ends.  (Tr. 851).

She has tried to go back to school.  She had help with note taking and taking tests through the "disabilities student services," but did not do well because of inability to concentrate.  (Tr. 852).

Plaintiff testified that she has problems with her hands and arms. She cannot extend her arms and hands as needed to do everyday functions.  She cannot open jars and "things of that nature" because of weakness in her hands.  She has constant pain in her neck, shoulders, hands and back.  She takes Vicodin.  She has Oxycontin, but does not take it unless her pain goes above a level 7.  (Tr. 852-853).  In order to try to alleviate her pain, she lays down with a body pillow under her back and her legs elevated.  She also does physical therapy exercises with her arms.  (Tr. 854-855).

Ms. Sherrill testified that she has depression and anxiety attacks.  She relates this to the fact that she is unable to work and take care of herself, and that she has to depend on her daughter and sister to help her.  (Tr. 854-855).

Gregory Jones testified as a vocational expert.  As there is an issue as to the hypothetical questions, the Court will set out the hypotheticals in full:

ALJ:   Okay.  If you have a hypothetical individual the claimant's age, education, and work experience, lift 20 pounds occasionally, ten pounds frequently, sit, stand, or walk six hours out of an eight-hour day, no climbing ladders, ropes, and scaffolds, other postural limitations, occasional reaching all directions.  Are you right or left-handed?

CLMT:      I'm right-handed, sir.

ALJ:   Okay.

BY ADMINISTRATIVE LAW JUDGE:

Q:     Occasional reaching in all directions left upper extremity, right-hand dominant, frequent reaching all directions right upper extremity, frequent handling and handling, fingering, and handling – strike that.

A:     Let it at handling and fingering?

Q:     No.  Just leave it at frequent reaching all directions.

A:     Okay.

Q:     Right upper extremity, nothing after that.

A:     Okay.

Q:     And then, let's see.  No limits understanding, memory, carrying out simple instructions, and detailed or complex instructions.  No limits simple judgments in work-related decisions, detailed or complex judgment and decisions.  No production rate jobs with production quotas, measured periodically throughout the workday but production quotas being met at the end of the workday or workweek.  No contact with the public, occasional contact with supervisors and coworkers, and limited to simple changes in work environment.

(Tr. 857-858.

The VE testified that such a person could not perform plaintiff's past relevant work, but could perform the jobs of housekeeping cleaner and routing clerk.  (Tr. 858.)  The ALJ then asked Ms. Sherrill whether she had prior surgery on her ankle.  She stated that she had two surgeries on her right ankle resulting from a fall at Tamms Correctional Center prior to the car

accident. (Tr. 859). The ALJ then asked the following hypothetical question:

> Q: You have a hypothetical individual Claimant's age, education, work experience, same limitations as the prior hypothetical except lifting ten pounds occasionally, less than ten pounds frequently, stand and or walk two hours out of an eight-hour day. Everything else is the same. Entry-level work at sedentary.

(Tr. 859).

In response, the VE testified that such a person could do the jobs of semiconductor bonder and addressing clerk. (Tr. 859-860).

**3.** **Records of Treatment Prior to Alleged Date of Disability**

Ms. Sherrill had surgery on her right foot/ankle following an injury in March, 2002. (Tr. 225).

**4.** **Records of Treatment and Evaluations On and After Alleged Date of Disability[1]**

Following a roll-over automobile accident, plaintiff was admitted to St. Louis University Hospital on October 30, 2003. She was diagnosed with a fracture at T-11, lacerations of the spleen and kidney, fracture of the left clavicle, concussion, bilateral pulmonary contusions and left pneumohemothorax.[2]

Ms. Sherrill remained at St. Louis University Hospital until November 15, 2003. Because the fracture at T-11 was unstable, fusion surgery was done on November 4, 2003. She was discharged in a back brace, with instructions to avoid driving or lifting more than 10 pounds.

---

[1]For reasons which are not explained, the transcript contains two (and sometimes three) copies of most of the medical records, numbered separately. Thus, there may be some discrepancies between the page numbers cited herein and the page numbers cited by the parties in their respective briefs.

[2]Pneumohemothorax is an accumulation of blood and gas in the pleural cavity. http://www.merriam-webster.com/medical/pneumohemothorax?show=0&t=1317230285, accessed on September 28, 2011.

(Tr. 291-346).

Plaintiff began seeing Rami Abdo, M.D., as her primary care physician in January, 2004. On the first visit, he noted her history of car accident and prior history of anxiety attacks. She was following up with a doctor at St. Louis University and was still in the back brace. She was not having anxiety attacks since she was off work, but she did feel depressed off and on. (Tr. 469-470).

On February 27, 2004, a doctor from St. Louis University prescribed physical therapy to strengthen and increase range of motion of plaintiff's left arm. (Tr. 577). She was in physical therapy at Memorial Hospital of Carbondale from March 9 through April 7, 2004. (Tr. 578-595). On the first visit, it was noted that she had just stopped wearing the back brace a week earlier, and she was very sensitive to touch throughout her back. Her incision was well-healed. She had pain, weakness and limitation of movement in her left shoulder and arm. (Tr. 592). She was discharged from therapy on April 22, 2004, after having missed 3 appointments. None of the therapy goals had been met. (Tr. 584). In May, 2004, a doctor from St. Louis University prescribed physical therapy for work hardening. Therapy was discontinued as as of May 27, 2004, because she reached a plateau in her progress and was unable to meet the therapy goals. The discharge summary indicated that she reported significant pain with activity or weather changes, and that she had demonstrated some increase in left shoulder strength, but her functional gains were very limited. (Tr. 612-613).

In August, 2004, primary care physician Dr. Abdo noted that her pain was better and she was only taking Aleve. She mainly had pain at night, in the left shoulder and left upper back. Her hands were only giving her trouble occasionally. She had some limitation of the range of

motion of the left shoulder. (Tr. 462-463). In October, 2004, Dr. Abdo noted that plaintiff had residual chronic pain. She complained of pain in her low back, wrist and ribcage. (Tr. 460).

Plaintiff's employer sent her to neurologist Lori Guyton, M.D, for an evaluation in November, 2004. (Tr. 508-510). Plaintiff complained of hand pain, left shoulder pain and limited range of motion, along with pain in her knees and left-sided pleurisy. On examination, Dr. Guyton found significant limitation of the range of motion of her left arm and hypersensitivity of the left side. Her right side was stronger than her left. Dr. Guyton stated that "Her complaints appear to be legitimate with respect to her history and her injury." (Tr. 510). Dr. Guyton concluded that she could not return to her job as a correctional officer, but that she could return to work in a job which did not require significant physical activity or fast response time. (Tr. 510).

State agency physician B. Rock Oh completed a physical RFC assessment on March 15, 2005. (Tr. 166-173). This evaluation was based on a review of the records and not on an examination of Ms. Sherrill. Dr. B. Rock Oh concluded that plaintiff had the physical RFC to perform work at the light level (frequent lifting of 10 pounds, occasional lifting of 20 pounds with ability to sit, stand, or walk for 6 out of 8 hours, and unlimited ability to push/pull), with postural limitations and limited ability to reach in all directions, including overhead.

On April 20, 2005, James Whisenhunt, Ph.D., performed a consultative psychological examination at the request of the agency. (Tr. 247-251). He concluded that plaintiff had a generalized anxiety disorder with post-traumatic stress symptoms.

On May 24, 2005, state agency psychologist Margaret Wharton completed a mental RFC assessment. (Tr. 174-177). In the summary conclusions portion of the assessment, she said that

plaintiff was markedly limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. She was moderately limited in other areas, including the ability to maintain attention and concentration for extended periods and to complete a normal workday and week without interruption from psychologically based symptoms. In the functional capacity assessment portion of the form, Dr. Wharton said that plaintiff was moderately limited in her ability to carry out detailed tasks and that she was limited to simple one-to-two step tasks because of her limited ability to maintain attention.

Dr. Wharton also completed a psychiatric review technique form. (Tr. 178-191). She indicated that plaintiff suffered from depression secondary to situation/injury and anxiety disorder, but that her condition did not meet or equal a listed impairment.

Ms. Sherrill continued to see Dr. Abdo in 2005. On March 22, 2005, he noted that she had reproducible tenderness over the left upper chest wall, and similar tenderness in the paraspinal muscle groups in the left upper thoracic spine and lower lumbosacral spine. Her reflexes were diminished at the knees bilaterally. She was unable to return to her job. (Tr. 665-666). In August, 2005, Dr. Abdo noted that she had chronic myofascial pain syndrome in her left upper extremity, along with anxiety.[3] He had previously recommended counseling. (Tr. 722).

Mr. Sherrill was in counseling from August 3, 2005, through September 21, 2005. (Tr. 811-814, 819-825). The counseling notes reflect complaints of anxiety, panic attacks and

---

[3]"Myofascial pain syndrome is a chronic form of muscle pain. The pain of myofascial pain syndrome centers around sensitive points in your muscles called trigger points. The trigger points can be painful when touched. And the pain can spread throughout the affected muscle." http://www.mayoclinic.com/health/myofascial-pain-syndrome/DS01042, accessed on September 30, 2011.

depression.

In January, 2006, plaintiff was seen by a physician's assistant in Dr. Abdo's office, who noted complaints of increased low back pain. He prescribed Vicodin. Plaintiff was seen by Dr. Abdo in March, 2006, and she was continuing to have significant pain and discomfort in her left upper extremity. Vicodin did not give her good results and made her sleepy, so her medication was changed to Percocet. She was taking classes in order to qualify for a more sedentary type of job. (Tr. 718). In June, 2006, she complained of increasing worrying and nervousness, and difficulty concentrating. Dr. Abdo prescribed Zoloft. (Tr. 714-715).

Ms. Sherrill returned to work on light duty in August, 2006. In October, 2006, she was assaulted by an inmate at Tamms Correctional Center. The next day, October 21, 2006, she was seen in Dr. Abdo's office for injuries sustained in the assault. She said that she had been grabbed by an inmate and pulled into the cell door, striking the right side of her body. The inmate tore her uniform shirt and bra. She was seen by a nurse at Tamms and taken to the emergency room, where she was given morphine shots and prescriptions for Oxycontin and Percocet. She had pain and tightness in her upper back and neck muscles, and anxiety about returning to work. (Tr. 700-701).

Dr. Abdo saw her on October 23, 2006. (Tr. 698). Ms. Sherrill reported that she had severe pain in the neck and left shoulder, along with diffuse back pain and pain in the upper thighs. She had to take Valium to control her muscle spasms, and her regular pain medication was not working. She wanted to follow up with a neurologist for history of numbness in her upper extremities. Dr. Abdo prescribed a muscle relaxer and Percocet. He recommended physical therapy and indicated that he would arrange for her to return to Dr. Guyton, the

neurologist.  (Tr. 698-699).

Dr. Guyton saw plaintiff on October 31, 2006.  The doctor noted that she had limitation of motion in her upper extremities due to pain, and she had tenderness in the cervical and thoracic regions.  Dr. Guyton recommended that she cut down on narcotic pain medication, and prescribed Neurontin instead.  Ms. Sherrill complained of weakness in her hands, and Dr. Guyton ordered nerve conduction studies.  (Tr. 771-772).  Nerve conduction studies of the upper extremities were done on November 15, 2006.  They showed evidence of mild sensory carpal tunnel syndrome.  (Tr. 776).

Dr. Guyton also ordered an MRI of the cervical spine, which was done on November 13, 2006.  This showed degenerative changes at C3 through C6, and a herniated disc protrusion at C5-C6 with no spinal stenosis or cord contusion.  (Tr. 779).

In December, 2006, Dr. Guyton noted that she had subjective complaints of weakened hand grasp.  She diagnosed left-sided pain which may be musculoskeletal, and neck pain.  She recommended that Ms. Sherrill try a wrist brace, and noted that she may need more physical therapy.  (Tr. 769).

Dr. Emily Hanson took over as plaintiff's primary care physician in December, 2006. (Tr. 785).  In January, 2007, she assessed plaintiff as having neck pain, radicular pain, and carpal tunnel syndrome.  (Tr. 788).

Ms. Sherrill underwent a vocational evaluation by Mike Langan of Southern Illinois University at Carbondale in April, 2007.  This evaluation took place over three days, April 9 to April 11, 2007.  (Tr. 749-766).  Mr. Langan administered a battery of tests, including the O*NET Ability Profiler, which consists of tests measuring nine abilities. Among the abilities measured

are finger dexterity ("ability to move the fingers skillfully and easily") and manual dexterity ("ability to move the hands skillfully and easily"). The results are expressed in percentiles. A score of 15 and under is below average. A score between 16 and 24 is low average. Ms. Sherrill scored in the 17th percentile for finger dexterity and in the 1st percentile for manual dexterity. (Tr. 755-756). Mr. Langan expressed doubt as to whether plaintiff was capable of full-time employment and noted that she would have difficulty performing job duties which call for use of the upper extremities. (Tr. 761-762).

On May 31, 2007, neurologist Dr. Guyton noted that Ms. Sherrill continued to have good days and bad days with pain, and that her hand was still hurting. On examination, she noted tenderness in the neck and pectoral muscles and weakened hand grasps. She described plaintiff as stable, no better and no worse. Dr. Guyton recommended that she increase the dose of Neurontin. (Tr. 768).

In December, 20007, Dr. Guyton noted that Ms. Sherrill had breast reduction surgery in July, 2007, and that her neck pain was better, but still present. Dr. Guyton detected tenderness in her cervical spine on examination. She also complained of shoulder pain, decreased hand grip, low back pain, and increased fatigue. The diagnosis was left-sided body pain, and neck and back pain. She was continuing to take Percocet as needed, and rarely used Oxycontin or Vicodin. Dr. Guyton recommended that she continue Neurontin, and noted that plaintiff did not want to increase the dose as it might make her sleepy. (Tr. 767).

Throughout 2007, Dr. Hanson documented continuing complaints of neck pain, arm pain, radicular pain, low back pain, anxiety and difficulty sleeping. She prescribed Percocet, Oxycontin and Flexeril at various times. (Tr. 787-801). In October, 2007, Dr. Hanson noted that

plaintiff was doing home physical therapy and using a TENS unit, and that she was having more pain in her arms and low back. (Tr. 798). In January, 2008, Dr. Hanson diagnosed anxiety and prescribed Lexapro. (Tr. 801). The last visit with Dr. Hanson is in April, 2008. On that visit, plaintiff complained of pain in her neck, shoulders and hands. (Tr. 808).

Dr. Hanson completed a functional capacity report on May 15, 2008, in which she indicated that Ms. Sherrill could not work an 8 hour day. She did not identify any tests, examination results or findings on the form when asked to do so. (Tr. 780-784).

### Analysis

Turning to plaintiff's second point first, it is clear that there was a fatal variance between the limitations assessed in the RFC findings and the hypothetical questions asked of the VE.

It is well-settled that an ALJ must include in his hypothetical question "those impairments and limitations that he accepts as credible." **Schmidt v. Astrue, 496 F.3d 833, 845-846 (7th Cir. 2007). Accord, O'Connor-Spinner v. Astrue, 627 F.3d 694, 619 (7th Cir. 2010), and cases cited therein.**

Here, the ALJ found that plaintiff has mental limitations, including a limitation to no more than "simple instructions or work related decisions." (Tr. 19). However, in the hypothetical question, he asked the VE to assume that plaintiff had "No limits understanding, memory, carrying out simple instructions, and detailed or complex instructions. No limits simple judgments in work-related decisions, detailed or complex judgment and decisions." (Tr. 858).

The Commissioner admits that the hypothetical question "was not a model of clarity and seems to have been less restrictive than his RFC finding...." Doc. 41, p. 19. The Commissioner

argues that remand is not required because there is "absolutely no indication" that Ms. Sherrill could not do the jobs identified by the VE.  ***Ibid***.  This argument ignores the fact that it is the Commissioner's burden at step 5 to show that there are jobs in the economy that plaintiff is able to perform.  ***Rhoderick v. Heckler***, **737 F.2d 714, 715 (7th Cir. 1984).**

The Commissioner also argues that the jobs identified by the VE (semi-conductor bonder and addressing clerk) could be performed by a person with the mental limitations found by the ALJ because those jobs are classified as unskilled.  He also cites ***Terry v. Astrue***, **580 F.3d 471, 478 (7th Cir. 2009)**, for the proposition that a person who is limited to simple work can do jobs that have a General Education Development reasoning level of 3.  The jobs identified by the VE in this case have a GED reasoning level of 2, so defendant argues that a person with plaintiff's mental limitations as found by the ALJ could do those jobs.  ***Terry*** did not, however, involve a discrepancy between the RFC findings and the hypothetical question; it involved the issue of whether there was a conflict between the VE's testimony and the Dictionary of Occupational Titles.  ***Terry***, **580 F.3d at 478.**  Defendant's argument here is that the VE would have given the same answer even if the hypothetical question had included all of the limitations that were found by the ALJ.  However, defendant has not cited a case wherein a failure to include all limitations in the hypothetical question was excused because the Court predicted that the VE's testimony would have been the same.

Plaintiff also argues, persuasively, that the ALJ erred in failing to build the requisite "logical bridge" between the evidence and his decision.  ***Clifford v. Apfel***, **227 F.3d 863, 872 (7th Cir. 2000)**.  He failed to do so in two important respects.

First, the ALJ did not explain the weight he gave to the assessments of the state agency consultants.  The Commissioner tacitly admits as much, but argues that the ALJ is not required to discuss every piece of evidence and that the ALJ "appears to have" accepted the physical RFC

assessment "to some extent" and that he "apparently" gave weight to the mental RFC assessment as well. Doc. 41, p. 9.

Obviously, the ALJ is not required to discuss every piece of evidence in the record. He is, however, required by 20 C.F.R. 404.1527(f) and SSR96-6p to explain the weight given to the consultative reports of state agency consultants.[4] The ALJ did not do so here.

The ALJ also failed to discuss the report of the vocational evaluation that was done by Mike Langan in April, 2007. The only reference ALJ Lang made to that report was to note that plaintiff told the examiner that she believed that she was capable of being productive. Tr. 22. The ALJ did not discuss Mr. Langan's findings at all, including his findings that she was in the 17th percentile for finger dexterity and in the 1st percentile for manual dexterity. (Tr. 755-756).

The Commissioner accurately points out that Mr. Langan is not a doctor, and is not classified as an "acceptable medical source" in the applicable regulations. Rather, he is an "other source." 20 C.F.R. §404.1513(d). That is beside the point. While his report would not have been sufficient by itself to establish plaintiff's impairments, §404.1513(a), it was relevant evidence. The report indicated that testing showed that plaintiff had serious limitations in the use of her hands and fingers. The ALJ did not assess any such limitations. The ALJ must "confront evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, **374 F.3d 470, 474 (7th Cir. 2004).**

The Commissioner's brief suggests that the ALJ was entitled to discredit Mr. Langan's report because it was contradicted by other medical evidence in the record. The ALJ did not say

---

[4]Social Security Rulings "are interpretive rules intended to offer guidance to agency adjudicators." *Lauer v. Apfel*, **169 F.3d 489, 492 (7th Cir. 1999)**. Social Security Rulings are "binding on all components of the Social Security Administration." **20 C.F.R. § 402.35(b)(1)**. They do not, however, "have the force of law or properly promulgated notice and comment regulations." *Lauer, id.*

that he discredited the report because of such conflicts. He simply failed to discuss the report's findings at all. It is "improper for an agency's lawyer to defend its decision on a ground that the agency had not relied on in its decision...." *McClesky v. Astrue*, 606 F.3d 351, 354 (7th Cir. 2010).

Lastly, plaintiff's third point, regarding the ALJ's credibility determination, is also well-taken.

ALJ Lang said that "the claimant's medically determinable impairments could reasonably be expected to produce some of the claimant's alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below." (Tr. 22).

The Seventh Circuit criticized similar language in *Parker v. Astrue*, 597 F.3d 920, 921-922 (7th Cir. 2010), stating that "It is not only boilerplate; it is meaningless boilerplate." As in *Parker*, the ALJ's analysis is meaningless because it does not communicate what weight he actually gave to Ms. Sherrill's statements. The ALJ does not specify which statements he found to be not believable. Such an analysis is inadequate. See, *Martinez v. Astrue*, 630 F.3d 693, 694-696 (7th Cir. 2011).

It is also problematic that the ALJ rejected Ms. Sherrill's statements to the extent that they did not mesh with his findings as to RFC. This approach "turns the credibility determination process on its head by finding statements that support the ruling credible and rejecting those statements that do not, rather than evaluating the [claimant's] credibility as an initial matter in order to come to a decision on the merits." *Brindisi v. Barnhart*, 315 F.3d 783, 787-788 (7th Cir. 2003).

This Court is not suggesting that the ALJ's use of the above boilerplate language is

necessarily fatal. The ALJ's decision might pass muster had he gone on to support his credibility findings with a sufficient articulation of how the record contradicts the claimant's statements. ALJ Lang did not do so here. The only explanation he gave for not believing plaintiff's statements about her symptoms was to review some of the medical evidence. (Tr. 22).

The ALJ can, of course, consider conflicts between the claimant's statements and the medical evidence, which may be viewed as "probative of exaggeration." ***Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).** However, he is required to look at other factors as well. 20 C.F.R.§404.1529 (c)(2) says that the agency will not reject a claimant's statements about her symptoms "solely because the available objective medical evidence does not substantiate your statements." That is what ALJ Lang did here. This was error. ***Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).**

The Social Security Agency has issued a Ruling in which it stresses that:

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, at *2. The ALJ must consider the entire record and cannot disregard the claimant's statements about her symptoms and the effect of her symptoms on her ability to work "solely because they are not substantiated by objective medical evidence." SSR 96-7p, at *1.

The Commissioner's brief suggests that plaintiff's credibility was diminished because there were periods of time when she did not use prescription pain medication and because of statements she made in agency forms about her daily activities. See, Doc. 41, pp. 15-17. Again,

these are grounds that were not relied upon by the ALJ in his decision. *McClesky v. Astrue*, **606 F.3d 351, 354 (7th Cir. 2010).**

The Commissioner defends the ALJ's determination by pointing out that such a determination should not be reversed unless it is "patently wrong," citing *Powers v. Apfel*, **207 F.3d 431, 435 (7th Cir. 2000)**. See, Doc. 41, p. 18. That argument is not applicable here, because the ALJ failed in his duty to consider and discuss all of the relevant factors listed in 20 C.F.R.§404.1529 (c)(2) and SSR 96-7p. In the absence of such a discussion of the reasons for his credibility analysis, the Court cannot determine whether it was "patently wrong." The ALJ's analysis is legally flawed and requires remand.

The above errors require that this case be remanded. However, it should be clear that this Court is not making any suggestion as to whether plaintiff is, in fact, disabled, or as to what the ALJ's decision should be on reconsideration.

Remand of a social security case can be ordered pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). A sentence four remand depends upon a finding of error, and is itself a final, appealable order. In contrast, a sentence six remand is for the purpose of receipt of new evidence, but does not determine whether the Commissioner's decision as rendered was correct. A sentence six remand is not an appealable order. **See,** *Perlman v. Swiss Bank Corporation Comprehensive Disability Protection Plan*, **195 F.3d 975, 978 (7th Cir. 1999).**

Here, a sentence four remand is appropriate.

### Recommendation

This Court recommends that the Commissioner's final decision be **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

Objections to this Report and Recommendation must be filed on or before **October 21,**

**2011.**

   **Submitted:  October 4, 2011.**




                              **s/ Clifford J. Proud**
                              **CLIFFORD J. PROUD**
                              **UNITED STATES MAGISTRATE JUDGE**